IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| ALLSTATE INSURANCE | ) | CV. NO. 10-00075 DAE LEK |
| COMPANY, an Illinois Corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AARON M. MILLER, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| ANDREA MANIAGO, Individually; | ) | |
| as Special Administratrix of the | ) | |
| ESTATE OF KAIʻO KAUMUALII | ) | |
| KEA-FUKUSHIMA, Deceased and | ) | |
| As Next Friend for SHAIYAN | ) | |
| MANIAGO-FUKUSHIMA, a Minor; | ) | |
| JERRY MANIAGO; and JUSTINE | ) | |
| K. WALLACE, Individually and as | ) | |
| Special Administratrix of the | ) | |
| ESTATE OF LAULA CHARLES | ) | |
| SEICHI WALLACE, Deceased | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| _____ | ) | |

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On July 6, 2010, and August 9, 2010, the Court heard  Plaintiff

Allstate Insurance Company's ("Plaintiff" or "Allstate") Motion.  Richard B.

Miller, Esq., appeared at the hearing on behalf of Plaintiff; Joseph L. Wildman,

Esq., appeared at the hearing on behalf of Defendant-Intervenors.  After reviewing

the motion and the supporting and opposing memoranda, the Court **GRANTS**

Plaintiff's Motion. (Doc. # 6.)

BACKGROUND

There is no dispute as to the material facts, set forth below, leaving no

genuine issue of material fact before this Court.

I.      The Underlying Lawsuit

On December 2, 2009, Jerry Maniago and Andrea Maniago

(individually and as administrator of the estate of Kai'o Kaumualii Kea-

Fukushima, deceased, and next friend for Shaiyan Maniago-Fukushima, a minor)

filed a complaint against Defendant Aaron M. Miller ("Miller" or "Defendant") in

the Circuit Court of the Second Circuit, State of Hawai`i, denominated Andrea

Maniago, et al. v. Aaron M. Miller, et al., Civil No. 09-1-0917(1) (the "Underlying

Lawsuit"). (Plaintiff's Statement of Concise Facts "PSCS" ¶ 1, Doc. # 7.)

The facts of the Underlying Lawsuit involve the tragic deaths of two

teenagers.  The Complaint states that on or about July 5, 2009, Kai'o Kaumualii

Kea-Fukushima ("Kai'o") and Laula Charles Seichi Wallace ("Laula") were

passengers in a 1994 Honda Civic driven by Stevens Ramos ("Ramos") on Kula

2

Highway when the vehicle was involved in an accident.  Kai'o and Laula suffered

severe injuries in the accident that caused their deaths.  (Id. ¶ 2; id., Ex. 1 ¶¶ 6-7.)

The complaint in the Underlying Lawsuit states that prior to the motor

vehicle accident, Ramos, Kai'o, Laula and other minors attended a party at Miller's

home.  The Maniagos contend that alcohol was possessed and consumed by minors

at the party, including Ramos, Kai'o, Laula, with Miller's knowledge. (Id. ¶ 3; id.,

Ex. 1 ¶¶ 8-9.)

The Maniagos assert claims against Miller for, inter alia, wrongful

death, negligence, and gross negligence. The underlying plaintiffs seek special and

general damages as well as punitive damages, together with prejudgment interest,

attorneys' fees and costs.  (Id. ¶ 4; id., Ex. 1 ¶¶ 10-14.)

II.     The Policy

Allstate issued a Homeowners Deluxe Policy, No. 907907882, to

Miller (the "Policy").  (Id. ¶ 5; id., Ex. 2.)  The Policy was in effect on the date of

the subject accident and afforded Family Liability Protection with a limit of

$300,000.00 per occurrence.  (Id., Ex. 2 at 6.)  The Policy is written on Allstate

Deluxe Homeowners Form AP2, which includes the following relevant insuring

language as to Family Liability Protection:

**Section II— Family Liability Protection and Guest Medical Protection**

**Coverage X**
**Family Liability Protection**

*Losses We Cover Under Coverage X:*
Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment or defend any suit after **we** have exhausted the limit of **our** liability.

(Id., Ex. 2 at 44 (emphasis in original).) The Policy also includes the following

exclusions under Section II Coverage X — Family Liability Protection and

Coverage Y — Guest Medical Protection:

*Losses We Do Not Cover Under Coverage X:*

1.      **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.**  This exclusion applies even if:
        a)      such **insured person** lacks the mental capacity to govern his or her conduct;
        b)      such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

4

c)      such **bodily injury** or **property damage** is sustained by
a different person than intended or reasonably expected.

**….**

5.      **We** do not cover **bodily injury** or **property damage** arising
out of the ownership, maintenance, use, occupancy, renting,
loaning, entrusting, loading or unloading of any motor land
vehicle or trailer.  However, this exclusion does not apply to:

a)      a motor vehicle in dead storage or used exclusively on
an **insured premises**;

b)      any motor vehicle designed principally for recreational
use off public roads, unless that vehicle is owned by an
**insured person** and is being used away from an **insured
premises**.

c)      a motorized wheel chair;

d)      a vehicle used to service an **insured premises** which is
not designed for use on public roads and is not subject to
motor vehicle registration;

e)      a golf cart owned by an **insured person** when used for
golfing purposes;

f)      a trailer of the boat, camper, home or utility type unless it
is being towed or carried by a motorized land vehicle.

g)      lawn and garden implements under 40 horsepower;

h)      **bodily injury** to a **residence employee**.

**….**

(Id., Ex. 2 at 44 (emphasis in original); id. at 46 (identical exclusions for Coverage

Y).)

On February 2, 2010, Allstate filed a Complaint for Declaratory

Judgment asking this Court to find that it has no duty to defend and/or indemnify

Miller in any capacity under the Policy for the claims asserted against him in the

Underlying Lawsuit, and for, costs, reasonable attorneys' fees, and any other relief

deemed just and equitable by the Court.  (Doc. # 1.)  On April 21, 2010, Plaintiff

filed the instant Motion for Summary Judgment ("MSJ," Doc. # 6) and its Separate

and Concise Statement of Facts ("PSCS," Doc. # 7).  On May 10, 2010, Plaintiff

and Miller stipulated through counsel to allow Andrea Maniago, Individually; as

Special Administratrix of the Estate of Kai'o Kaumaulii Kea-Fukushima, Deceased

and As Next Friend for Shaiyan Maniago-Fukushima, a Minor; Jerry Maniago; and

Justine K. Wallace, Individually and as Special Administratrix of the Estate of

Laula Charles Seichi Wallace Deceased (collectively, "Intervenors"), to intervene

as Defendants in the instant action.  (Doc. # 13.)  On May 20, 2010, Intervenors

filed their Answer.  (Doc. # 14.)  On June 14, 2010, Intervenors filed their

Opposition ("Opp'n," Doc. # 18), which was accompanied by a declaration of

counsel and documentation but no separate and concise statement of facts as

required by the Local Rules of this District. See Local Rule 56.1(b)-(g).  On June

22, 2010, Plaintiff filed its Reply.[1]  (Doc. # 22.)

---

[1] By its Reply, Allstate requests default judgment be entered against Miller pursuant to Federal Rule Civil Procedure 55 based on failure of Miller to file an opposition to its April 27, 2010 Motion for Entry of Default Judgment (Doc. # 9). (See Reply at 1 n.1.)  The Clerk made an Entry of Default against Miller on April

(continued...)

At this Court's hearing on July 6, 2010, the Court ordered the parties

to filed additional simultaneous briefing regarding an additional Policy provision.

On July 19, 2010, Intervenors filed their additional briefing.  (Doc. # 26.)  On July

20, 2010, Plaintiff filed its additional briefing.  (Doc. # 27.)

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't

of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d

1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of

factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317,

323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  The burden initially falls upon the moving party to identify for the court

---

[1](...continued)
27, 2010 due to Miller's failure to answer or otherwise defend against Allstate's
Complaint.  (Doc. # 11.)  Because the Court now grants Plaintiff's Motion, this
issue is moot because judgment is ordered against all Defendants.

those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party.  The nonmoving party's evidence must be taken as true.  T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 632 (9th Cir. 1987) (internal citations omitted).

However, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.  Instead, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.  Id. at 630 (citation omitted) (emphasis added).  The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the factual context makes the

8

non-moving party's claim or defense implausible, the party must come forward

with more persuasive evidence than would otherwise be necessary to show that

there is a genuine issue of trial.  Id. at 587.

DISCUSSION

Plaintiff seeks summary judgment on the ground that it has no duty

under the Policy to defend or indemnify Defendant Miller for the claims asserted

against him in the Underlying Lawsuit.  Specifically, Plaintiff maintains that

coverage for the underlying claims is precluded by the Policy's exclusion for

bodily injury arising from the use or operation of any motor vehicle.  (MSJ at 4.)

I.    Hawai'i Insurance Coverage Law

State law governs the resolution of substantive issues in this diversity

action.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Snead v. Metro. Prop.

& Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).

Insurance policies are subject to the general rules of contract

construction.  Dawes v. First Ins. Co. of Hawai'i, 883 P.2d 38, 42 (Haw. 1994).

Under Hawai`i law, construction of a contract, where material facts are undisputed,

is a question of law for the court.  See National Union Fire Ins. Co. v.Reynolds,

889 P.2d 67, 71 (Haw. App. 1995); Cho Mark Oriental Food v. K & K

International, 836 P.2d 1057, 1064 (Haw. 1992).  Thus, summary judgment is

9

appropriate when a court determines, as a matter of law, that the terms of an

insurance policy do not provide coverage.  See Crawley v. State Farm Mutual

Automobile Ins. Co., 979 P.2d 74, 78 (Haw. App. 1999); Foote v. Royal Ins. Co. of

America, 962 P.2d 1004, 1008 (Haw. 1998).

        The terms of insurance policies must be interpreted according to their

plain, ordinary and accepted sense in common speech, unless it appears from the

language of the policies that a different meaning is intended.  Id.   Insurance

polices are contracts of adhesion and must be construed liberally in favor of the

insured and any ambiguities must be resolved against the insurer.  Tri-S Corp. v.

Western World Ins. Co., 135 P.3d 82, 98 (Haw. 2006) (citation omitted).

Additionally, insurance policies must be construed in accord with the reasonable

expectations of a layperson.  Id.

        An "[a]mbiguity exists . . . only when the [policy] taken as a whole, is

reasonably subject to differing interpretation.  Absent an ambiguity, the terms of

the policy should be interpreted according to their plain, ordinary, and accepted

sense in common speech . . . ."  Oahu Transit Services, Inc. v. Northfield Ins. Co.,

112 P.3d 717, 722 n.7 (Haw. 2005) (brackets in original) (citation omitted).

"Liability insurers have the same rights as individuals to limit their

liability, and to impose whatever conditions they please on their obligation,

provided they are not in contravention of statutory inhibitions or public policy."

Liberty Mut. Ins. Co. v. Sentinel Ins. Co., Ltd., 205 P.3d 596, 614-615 (Haw. App.

2009).

        An insurer's duty to defend is contractual in nature.  Commerce &

Indus. Ins. Co. v. Bank of Hawaii, 832 P.2d 733, 735 (Haw. 1992) (citation

omitted).  An insurer's duty to defend arises whenever there is a potential for

coverage, and thus does not depend on whether liability is ultimately established.

Id.  Under the "complaint allegation rule," the duty to defend is determined at the

time that the defense is tendered to the insurer or the insurer otherwise is on notice

that a complaint has been filed against its insured.  See, e.g., Dairy Rd. Partners v.

Island Ins. Co., Ltd., 992 P.2d 93, 108-16 (2000); Commerce & Indus. Ins. Co.,

832 P.2d at 735.  The potential insured need only show that the underlying claim

may fall within policy coverage; the insurer must prove it cannot."  Dairy Road

Partners, 992 P.2d at108-16.

        Where the pleadings fail to allege any basis for recovery within the

coverage of the subject policy, the insurer has no obligation to defend.  Hawaiian

Holiday Macadamia Nut Co. v. Indust. Indem. Co., 872 P.2d 230, 233 (Haw. 1994)

(citation omitted).  In determining whether coverage exists under a liability policy,

Hawaii courts do not look at the way a litigant states a claim, but rather at the underlying <u>facts</u> alleged in the pleadings.  <u>See</u> <u>Oahu Transit Services, Inc.</u>, 112 P.3d at 721; <u>Bayudan v. Tradewind Ins. Co.</u>, 957 P.2d 1061, 1069 (Haw. App. 1998).

II.   <u>The Policy</u>

The Policy excludes coverage for bodily injury or property damage arising out of the "ownership, maintenance, <u>use</u>, <u>occupancy</u>, renting, loaning, entrusting, loading or unloading of any motor vehicle[,]"(the "automobile exclusion").  (PCSF, Ex. 2 at 44 (emphasis added).)  The Court finds that none of the exceptions to the automobile exclusion applies here, and Intervenors do not assert otherwise.

A.   Application of the Automobile Exclusion

Plaintiff argues that the automobile exclusion bars coverage for Defendant Miller under the Policy.  (Mot. at 4.)  Intervenors argue that the automobile exclusion is not applicable because the claims against Defendant in the Underlying Lawsuit involve the "non-automobile negligence of Defendant Miller on the insured premises[,]" (Opp'n at 3), and should not be excluded by the "motor vehicle accident[, which] did not occur on the premises of the insured (Miller's property) and [where] the drivers of the vehicles involved in the accident were not

agents of the insured[]" (id. at 10-11).  The issues in this case requiring application

of the automobile exclusion are substantially similar to this Court's prior decision

in Allstate Ins. Co. v. Naai, --- F. Supp. 2d ----, 2010 WL 290684 (D. Haw. Jan. 22,

2010).

        Hawai`i courts apply a three-part test in order to determine whether

an injury arises from the use or operation of a motor vehicle:

> The first factor [is] whether the ... motor vehicle was an active
> accessory in causing [the] plaintiff's injuries....
> The second factor [is] whether there was an independent act breaking
> the causal link between "use" of the vehicle and the injuries
> inflicted....
> The third factor [is] whether the injuries resulted from use of the
> vehicle for transportation purposes[.]

Oahu Transit Services, Inc. v. Northfield Ins. Co., 112 P.3d 717, 722 (Haw. 2005)

(citation omitted, brackets and marks in original).  In Oahu Transit Services, the

operator of Oahu's bus service sought coverage under its commercial general

liability ("CGL") policy for claims arising from an incident in which a disabled

passenger suffered a spinal cord injury after a handivan driver unfastened the seat

belt securing the passenger in his wheelchair.  Id. at 719.  The insurance policy at

issue included an exclusion for "[b]odily injury or property damage arising out of

the ownership, maintenance, use or entrustment to others of any aircraft, auto or

watercraft owned or operated by or rented or loaned to any insured."  Id. at 718.

13

The Hawai`i Supreme Court found the phrase "arising out of the ownership, maintenance, [or] use" to be unambiguous based upon precedent.  Id. at 721.  The court then applied the exclusion to the claims against the transit company and found that under the three-part test, the underlying lawsuit arose from the use or operation of an automobile because: 1) the van was an active accessory in the plaintiff's injury—its movement caused his wheelchair to tip over, which led to the driver's attempts to free him and, ultimately, to the passenger's injuries; 2) the van was used in transportation because the plaintiff was injured while a passenger; and 3) the driver's act of unbuckling the passenger's seat belt was not an "independent act" breaking the casual link between the use of the automobile and the plaintiff's injury because the transit operator was in the business of transporting passengers, and therefore, the driver's actions were not "independent" from the use of an automobile.  Id. at 723.

Relevant to the instant case, the underlying lawsuit in Oahu Transit Services alleged "seemingly non-auto-related allegations" including allegations that the defendants were negligent in the hiring, training and supervision of the handivan driver.  Id. at 721.  Nonetheless, the court held that the plaintiff's theories of liability were not determinative of the existence of coverage.  Id.; see also County of Kaua`i v. Scottsdale Ins. Co., Inc., 978 P.2d 838 (Haw. 1999) (law

14

enforcement insurance policy containing an automobile exclusion did not provide

coverage for the insured against a claim for negligent supervision of a police

officer who drove out of the lined portion of a road and killed an individual

because the insured's liability stemmed from an automobile accident).

In the instant case, the Underlying Lawsuit arises from an automobile

accident on the Kula Highway that occurred while Ramos was driving after leaving

a party located at Defendant Miller's home.  (PCSF, Ex. 1¶¶ 7-8.)  Accordingly,

the injuries arose from use of the motor vehicle for transportation purposes.  There

was no independent act breaking the causal link between "use" of the vehicle and

the injuries inflicted because the injuries were directly caused by the motor vehicle

accident.  (Id.); see Oahu Transit Services, Inc., 112 P.3d at 722.  Therefore, under

Hawaii's three-part test, plaintiffs' complaint in the Underlying Lawsuit arises

from the use or operation of a motor vehicle. Although the Underlying Lawsuit is

characterized as a "non-vehicle tort," it is clear that the injuries claimed in the

lawsuit arose from a motor vehicle tort and all damages requested arise from the

injuries and subsequent emotional distress caused by the motor vehicle accident.

As indicated above, in Hawai`i theories of liability in the complaint do not

determine the existence of coverage.  See Oahu Transit Services, Inc., 112 P.3d at

724.  Furthermore, the potential liability of Defendant Miller for all the causes of

action in the Underlying Lawsuit arise from the deaths of Kai'o and Laula that in turn arise from the motor vehicle accident.

B.   Enforceability of the Automobile Exclusion

As stated above, the Policy's automobile exclusion states: **"We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer."  (PSCS, Ex. 2 at 44 (emphasis in original).) Additionally, as demonstrated above, Hawai'i courts have upheld automobile exceptions in homeowners' policies.  See Oahu Transit Services, Inc., 112 P.3d 717; Fortune v. Wong, 702 P. 2d 299 (Haw. 1985) (parents with a homeowner's policy that excluded bodily injuries arising from the use of a motor vehicle had no insurance coverage for their minor child's negligence in driving a motor vehicle).

In support of their argument that the Policy's automobile exclusion is ambiguous and should be construed in favor of coverage, Intervenors attempt to distinguish the instant case from this Court's decision in Naai and, like the defendants in Naai, cite Essex Ins. Co. v. City of Bakersfield, 65 Cal. Rptr. 3d 1 (Cal. App. 2007).  (Opp'n at 3-7.)  In Essex, the CGL insurance policy at issue was issued to the City of Bakersfield for a special event.  Essex, 65 Cal. Rptr. 3d at 4. The policy contained two exclusions for automobiles, both similar to the

automobile exclusion in the instant case.[2]  Id. at 8.  On the night of the event, an

accident involving an automobile and a tractor-trailer occurred near the entrance to

the event parking lot.  Id. at 3.  The underlying lawsuit against the City alleged

"bodily injury" proximately caused by a dangerous condition created by the event.

Id. at 8.  The Essex Court found that the automobile exclusions did not apply to the

underlying lawsuit because the exclusions were "unusual and unfair limitations of

coverage that defeat the insured's reasonable expectations of coverage" in light of

the fact that the exclusions were not brought to the attention of the insureds.  Id. 8-

9 ("The auto exclusions when viewed in the context of the insurance policy do not

plainly and clearly exclude coverage for bodily injuries arising from automobile

accidents where the insured had no connection to the automobiles involved.")  The

court found that an average layperson would interpret the auto exclusions as

applying to lawsuits involving "the use of or other acts relating to any "auto" by

any insured or on the insured premises[,]" and the accident at issue neither

occurred on the premises nor was there any evidence that the automobiles were

going to or leaving the insured premises.  Id. at 9-11.

---

[2] The auto exclusions provided no coverage for: "'bodily injury' or 'property damage' arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any 'auto'" (the auto exclusion) or for any injury, loss or damage arising out of automobiles (the special events/spectator liability endorsement)."  Essex, 65 Cal. Rptr. 3d at 9.

Intervenors state that here, like in <u>Essex</u>, the motor vehicle accident did not occur on the premises of Defendant and the drivers of the vehicles involved in the accident were not agents of the insured.  (<u>See</u> Opp'n at 4.)  Therefore, Intervenors argue that the Policy is ambiguous and not "plain and clear enough" to defeat coverage because:

> [t]he reasonable expectation of Defendant Miller as an average
> layperson would interpret the auto exclusion as applying to lawsuits
> involving the use or other acts relating to Defendant Miller's insured
> automobile or an automobile accident on the premises of Miller's
> property -- neither situation exists in the present case.

(<u>Id.</u> at 10, 6.)  Additionally, Intervenors contend that the cases cited by Plaintiff are factually distinguishable because they all involved automobile exclusions in the context of being applied to an automobile operated by an insured or operated on the insured premises.  (<u>Id.</u> (citing <u>Fortune</u>, <u>Oahu Transit Services</u> and <u>Naai</u>).)

As to Intervenors' assertion that the automobile exclusion defeats the insured's reasonable expectation of coverage, the instant case is distinct from <u>Essex</u>.  <u>Essex</u> involved a CGL policy whereas the instant case involves a homeowners policy with different expectations of coverage.  <u>Essex</u>, 65 Cal. Rptr. 3d at 11 ("A CGL policy is intended to cover every risk that is not excluded. . . . [some] exclusions are designed to limit coverage for risks normally covered by other insurance.")  Risks associated with  motor vehicle accidents are

18

not normally risks associated with home or property ownership.  See Fortune, 702

P. 2d at 306 ("The use of an automobile presents hazards not closely associated

with the home, for which other insurance is customarily carried and is generally

understood to afford coverage.")

Additionally, unlike Essex, in the instant case the underlying act

sought to be covered is an act for which coverage could not be expected as it

involved the alleged criminal actions of defendant.  Defendant Miller is accused of

a criminal act—providing alcohol to minors—that allegedly caused a horrific

accident.  Providing alcohol to minors is not a risk normally covered by other

insurance and certainly cannot be considered a normal expectation of a reasonable

layperson to be covered against such an act.

Insurers have a contractual right to limit their liability and to impose

conditions on their obligations that are not in contravention of statutory inhibitions

or public policy.  Liberty Mut. Ins. Co., 205 P.3d at 614-15.  Intervenors identify

no statutory or public policy prohibition that would preclude an insurer from

excluding liability in a homeowners policy for any loss connected with an

automobile accident.  Moreover, here, it is not against public policy, in fact it is

within public policy, to not allow people to insure themselves against the "risk" of

providing alcohol to minors.  Therefore, the Court does not find the automobile

exclusion to be an unusual and unfair limitation of coverage that defeats the

insured's reasonable expectations of coverage.

Moreover, the Court does not find the language of the automobile

exclusion to be ambiguous.  The Policy's automobile exclusion clearly states that it

applies to "any" motorized land vehicle.  As the Hawai`i Supreme Court noted in

Fortune, "a court cannot rewrite the contract of the parties."  Fortune, 702 P.2d 306

(citation omitted).   The Court cannot alter the plain meaning of Policy language by

holding that the automobile exclusion does not apply unless the insured has a

connection through, e.g., ownership, operation or use of the motor vehicle causing

the injury or to the premises on which the injury occurred.  Here the Policy's

automobile exclusion does not state or even indicate any such limitation.  See

Allstate Ins. Co. v. Keillor, 511 N.W.2d 702 (Mich. App. 1993) (finding no

coverage for the insured because the automobile exclusion at issue was

unambiguous and applied to any automobile where the insured had no connection

with the automobile and the accident did not occur on premises owned or

controlled by the insured); Allstate Indem. Co. v. Russell, 345 Fed. Appx. 264 (9th

Cir. September 8, 2009) (unpublished) (same).[3]  The Court additionally finds that

---

[3] Ninth Circuit Rule 36-3 provides that unpublished dispositions and orders
"are not precedent, except when relevant under the doctrine of law of the case or
(continued...)

the phrase "arising out of the ownership, maintenance, [or] use" is clearly

unambiguous based upon Hawai`i and Ninth Circuit precedent.  Id. at 721.  This

Court will not create ambiguity where there is none.

Intervenors argue that Hawai`i recognizes that there may be more than

one substantial factor in bringing about an injury.  (Opp'n at 9-10 (citing Civil

Pattern Jury Instruction 7.1 with respect to "Legal Cause").)  Intervenors state that

the allegations in the Underlying Lawsuit address acts and/or omissions and/or

negligence of Defendant Miller that is totally unrelated to the use of a motor

vehicle.  (Opp'n at 8.)  Specifically, Defendant's alleged provision of alcohol to

Ramos, Kai'o, and Laula prior to the automobile accident.  (PCSF, Ex. 1¶¶ 7-8.)

In doing so, Intervenors attempt to distinguish Allstate Indem. Co. v. Russell, 345

Fed. Appx. 264 (9th Cir. Sep. 8, 2009) (unpublished), cited above, where the Ninth

Circuit held that the concurrent causation doctrine, i.e. multiple causes for one

event, did not apply in a case for the purposes of analyzing insurance coverage.

---

[3](...continued)
rules of claim preclusion or issue preclusion."  The rule also provides that
unpublished dispositions issued on or after January 1, 2007, may be cited to the
courts of the Ninth Circuit in accordance with Fed. R. App. P. 32.1, which states
that a party who cites an unpublished order that is not publically available in an
electronic database must provide a copy of the order.  The case cited above was
issued after January 2007 and is available in an electronic database.

The Ninth Circuit in <u>Russell</u> held that a policy's automobile
exclusion, identical to the one at issue here, applied regardless of whether a
concurrent cause doctrine was applicable.  <u>Russell</u>, 345 Fed. Appx. at 265.  As the
court stated:

> To escape an exclusion, a concurrent cause must be truly "separate
> and distinct" from the excluded cause. . . . If there is a "sufficient
> nexus" between an excluded cause and the acts of the insured that
> give rise to the claim, the acts are not truly a "separate and distinct"
> cause, but rather fall within the exclusion.

<u>Id.</u> (internal citations omitted).

In their briefing to this Court, neither party addresses that the Ninth
Circuit in <u>Russell</u> specifically distinguished its holding from <u>Salem Group v.
Oliver</u>, 607 A.2d 138 (N.J. 1992), wherein the New Jersey Supreme Court held that
an insurer had a duty to defend an underlying claim against the insured for
supplying alcoholic beverages to a minor who later was involved in an off
premises All-Terrain Vehicle ("ATV") accident, even though the policy at issue
had a coverage exclusion for any loss for bodily injury arising out of operation,
ownership, or use of motor vehicles owned by insured because at least one count of
the complaint alleged a basis for liability—social host liability for the provision of
alcohol to a minor—in addition to the plaintiff's use of the ATV.  <u>Id.</u> at 140.

However, at least one court has found an automobile exclusion applicable to deny coverage in a case involving allegations that an insured provided a minor with alcohol that ultimately led to an automobile accident. See Keillor, 511 N.W. 2d at 705 (automobile exclusion operated to preclude coverage for insured's son for damages allegedly arising out of the son's furnishing of liquor to a minor who subsequently became involved in a head-on collision that killed the occupant of another vehicle). This Court finds Salem Group's reasoning unpersuasive. As the court in Allstate Insurance Company v. Blount, 491 F.3d 903, 911 (8th Cir. 2007) stated:

> In determining whether there are concurrent proximate causes of an injury, Missouri courts examine whether each alleged cause could have independently brought about the injury. Under the doctrine, an insured seeking coverage under a provision of a policy must be able to establish an independent claim under that provision, while at the same time not relying on an element of a claim that falls under an exclusion of the policy. If the insured cannot so establish, the exclusion prevails.

Id. (internal citations and marks omitted). Here, the concurrent cause doctrine may not be applied because Defendant Miller's alleged provision of alcohol could not have independently caused the deaths of Kai'o and Laula. See id. Without the underlying motor vehicle accident, there would have been no injury and no basis for the Underlying Lawsuit. See Bayudan, 957 P.2d at 1069 (holding that no

coverage existed because all counts of the complaint were inextricably tied with the allegations of sexual assault).  Further, all of the causes of action in the Underlying Lawsuit implicated Defendant Miller's alleged knowledge that liquor was possessed and consumed by various minors on his property, making it impossible for Intervenors to establish an independent claim.  (See Doc. # 26, Ex. 1.)

However, this point is moot, because even if the Court was to find multiple causes for the Underlying Lawsuit, unlike the policy in Salem Group, the instant Policy excludes coverage for the act of providing alcohol to minors because such an act is an "intentional or criminal act," as described below.  (PSCF, Ex. 2 at 44, 46); see also Keillor, 511 N.W.2d 702; Allstate Ins. Co. v. Greer, 921 N.E.2d 793 (Ill. App. 2009).

C.      Application of the Intentional or Criminal Acts Exclusion

Besides the automobile exclusion, the Policy also clearly excepts Family Liability coverage for the intentional or criminal acts of any insured person (the "intentional or criminal acts exclusion"):

> **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected tor result from the intentional or criminal acts or omissions of, any **insured person.**  This exclusion applies even if:

a)   such **insured person** lacks the mental capacity to govern his or her conduct;

b)   such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

c)   such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

(PCSF at 44, 46.)  It is illegal to serve a minor alcohol in Hawai`i pursuant to Hawai`i Revised Statutes § 712-1250.5 (Promoting intoxicating liquor to a person under the age of twenty-one), which states in pertinent part that:

(1)   A person . . . commits the offense of promoting intoxicating liquor to a person under the age of twenty-one if the person knowingly:

. . .

(b)   Permits a person to possess intoxicating liquor while on property under his control, and the person possessing the intoxicating liquor is a person under the age of twenty-one.

(4)   Promoting intoxicating liquor to a person under the age of twenty-one is a misdemeanor.

HRS § 712-1250.5(1)(b), (4).  In the instant case, the Underlying Lawsuit alleges that "[w]ith Defendant MILLER'S knowledge, intoxicating liquor was possessed and consumed by various minors on [Miller's] property which was under the possession and control of Defendant MILLER."  (Doc. # 26, Ex. 1 ¶ 9.)

Therefore, the Underlying Lawsuit alleges all the elements of a criminal offense under HRS § 712-1250.5.

Intervenors acknowledge that Defendant Miller could not have reasonably expected his homeowner's policy to insure a risk of an intentional or criminal act (Doc. # 26 at 6), but argue that the Underlying Lawsuit also alleges negligent and/or grossly negligent conduct, not intentional torts.  (<u>Id.</u> at 3, 5.) However, the Hawai`i Supreme Court  holds that "in this jurisdiction, we have never restricted claims sounding in negligence to unintentional or 'careless' conduct."  <u>Dairy Rd. Partners</u>, 992 P.2d at 114–15.  Instead, "a cause of action sounding in negligence will lie if the defendant breaches a duty owed to the plaintiff, thereby legally causing the plaintiff injury."  <u>Id.</u>  Furthermore, if the "defendant owes the plaintiff a duty, the thoughts passing through the defendant's mind as he or she breaches that duty are immaterial."  <u>Id.</u>   Here, the Underlying Lawsuit alleges negligence, but Defendant Miller's basis for liability is founded upon his knowing conduct.  A defendant in a criminal case alleging that he intentionally provided alcohol to a minor cannot escape criminal liability by arguing that his conduct was also grossly negligent.

As the court in <u>Keillor</u> stated:

> where, as here, an insured knowingly furnishes alcohol to a minor and the minor, after drinking all night, gets into an automobile to drive home, injury reasonably can be expected to occur. A minor's driving of a car while intoxicated and causing an accident is the natural, foreseeable, expected, and anticipated consequence of alcohol knowingly being furnished to the minor who proceeds to take the opportunity actually to drink all night at a party. Accordingly, the trial court did not err in granting summary disposition on the basis that the exclusion for intentional and criminal acts applies to preclude coverage.

<u>Keillor</u>, 511 N.W.2d at 705; <u>see</u> <u>also</u> <u>Greer</u>, 921 N.E.2d 793 (holding that insurer did not have duty to defend insureds in lawsuit alleging criminal acts of insureds and that there was no Illinois public policy that would prohibit policy from excluding coverage for intentional or criminal acts); <u>Blount</u>, 491 F.3d at 911-913 (insured homeowner's negligence in failing to supervise and provide assistance to minor visitor who died at her home after consuming alcohol was subject to criminal acts exclusion of homeowners liability insurance policy because insured's negligence was not independent of her criminal act of providing her home to minors for consumption of alcohol and controlled substances); <u>Allstate Ins. Co. v. J.J.M.</u>,657 N.W.  2d 181, 254 Mich. App. 418, 422-23 (Mich. App. 2002) (exclusion in homeowner's policy for coverage for bodily injury or property damage reasonably expected to result from intentional or criminal acts of insured

27

barred coverage for injuries to minor who was raped while at party in homeowner's residence where alcohol was served to minors and homeowner's conduct of furnishing alcohol to minors was alleged to be both knowing and illegal).

Intervenors assert that the Policy's intentional or criminal acts exclusion is ambiguous.  (Doc. # 26 at 7.)  The basis for this argument is that the exclusion purports to exclude criminal acts for which an individual is not charged with or convicted of a crime.  (Id.)  Intervenors also assert that Defendant Miller's denial of the facts alleged in the Underlying Lawsuit distinguishes this case from Keillor.  (Opp'n at 9.)  However, neither argument is convincing to the Court because, as explained below, the Policy's plain language does not require a criminal charge or conviction and coverage is determined through the Underlying Lawsuit's factual allegations.

In Hawai`i, "[t]he duty to defend is limited to situations where the pleadings have alleged claims for relief [that] fall within the terms for coverage of the insurance contract.  Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend."  Pancakes of Haw., Inc. v. Pomare Properties, 944 P.2d 83, 89 (Haw. Ct. App. 1997); see also Allstate Ins. Co. v. Kim, 121 F. Supp. 2d 1301, 1305-06 (D. Haw. 2000) (insured's denial

28

of assault allegations and even his acquittal in criminal case involving the same allegations had no bearing on the existence of coverage for civil claims arising from alleged assault); <u>Greer</u>, 921 N.E. 2d 793; <u>Allstate Ins. Co. v. Raynor</u>, 969 P.2d 510 (Wash. App. 1999) (neither a criminal charge nor a conviction was a prerequisite to operation of a homeowners insurance policy exclusion of liability coverage for criminal acts); <u>Allstate Ins. Co. v. Burrough</u>, 120 F.3d 834 (Ark. 1997) (criminal acts exclusion of homeowners' insurance policy applied to act of insured minor in furnishing another juvenile with firearm involved in accidental shooting; although insured could not be charged or convicted of criminal offense of furnishing deadly weapon to minor, his conduct satisfied all elements of offense, offense remained criminal act for purposes of exclusion, and, under its terms, exclusion applied regardless of whether insured was charged or convicted of crime); <u>Allstate Ins. Co. v. Carmer</u>, 794 F. Supp. 871 (S.D. Ind. 1991) (teenage automobile passenger who passed a beer to the automobile's underage driver was not covered under his parents' renters policy for injuries suffered by passenger of another automobile when two automobiles collided; policy exclusion for bodily injury resulting from criminal act or omission applied, as teenage passenger's actions violated Indiana Criminal Code, even though he could not be prosecuted criminally).  Therefore, the Policy's intentional and criminal acts exclusion is not

29

made ambiguous or inapplicable by either Miller's assertion of innocence or the fact that he was never charged with a criminal offense.

Moreover, Intervenors may not logically argue in the Underlying Lawsuit that Defendant Miller is guilty of an intentional act yet at the same time profess to this Court that he may be innocent in order to obtain coverage.  (Doc. # 26 at 5.)  As explained above, coverage depends on the factual allegations in the Underling Lawsuit, which here clearly alleges that Defendant Miller knowingly allowed alcohol to be served to minors on his premises.  In fact, this allegation forms the entire basis for the action.  Accordingly, this exclusion independently serves to deny coverage under the Policy.

In the instant case, under the factors enumerated in <u>Oahu Transit Services</u>, the plaintiffs' claims in the Underlying Lawsuit "arose" from the operation or use of a motorized land vehicle on the insured property.  The Policy is not ambiguous and the Policy's automobile exclusion's plain language states that it does not apply to bodily injury arising from the operation of <u>any</u> motor vehicle.  Furthermore, the allegation of furnishing alcohol to a minor is a criminal act within

the meaning of the exclusionary clause, and therefore, precludes coverage under the Policy.[4]

For all the reasons above, the Court finds that Allstate has no duty to indemnify Defendant under the Policy.  Similarly, Plaintiff also owes no duty to defend Defendant, because the Underlying Lawsuit raises no causes of action against Defendant Miller that arise from an event other than his alleged act of providing alcohol to the minors involved in the automobile accident.

Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.

---

[4] In Intervenors' conclusion to their Opposition, they state that if this Court finds that the automobile exclusion applies to "any" motor vehicle that a genuine issue of material fact is created as to whether Defendant purchased a homeowners policy with "illusory coverage."  (Opp'n at 10.)  Intervenors fail to support this assertion with any argument or documentation and therefore fail to meet their burden on summary judgment, especially in light of the Policy exclusions clearly precluding coverage.  Further, the Policy is a homeowners policy not an automobile policy or an umbrella all risk policy for which this argument might be more appropriate.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.  The Clerk of the Court is hereby directed to enter judgment in favor of Plaintiff.


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 10, 2010.

_____
David Alan Ezra
United States District Judge



Allstate Ins. Co. v. Maniago, et al., Cv. No. 09-00075 DAE/LEK; ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT